Eastern District of Kentucky
F I L E D
JAN 22 2007
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 05-441-JBT

PHYLLIS MORRIS,                                                      PLAINTIFF

V.                  **MEMORANDUM OPINION AND ORDER**

CALIFORNIA CASUALTY &
INDEMNITY EXCHANGE,                                        DEFENDANT

\* \* \* \* \* \* \* \* \* \*

This diversity, negligence action was tried before a jury on August 28-29, 2006. The jury awarded plaintiff Phyllis Morris $18,104.82 for past medical expenses, $18,000.00 for future medical expenses she is likely to incur, $64,000.00 for permanent impairment of her power to earn money, and $-0- for pain and suffering.[1] [DE #60].

This matter is before the court on plaintiff's motion, filed pursuant to Kentucky Civil Rule 59.01(d), for a new trial [DE #67], which has been fully briefed and is ripe for review.

As grounds for her motion for a new trial, plaintiff contends that she is entitled to a new trial on damages concerning her pain and suffering as the jury's award of $0.00 damages for pain and suffering is inconsistent with the evidence. Plaintiff argues that due to the facts of this case, including plaintiff's testimony and the testimony of the physicians, she is entitled to an award of damages for pain and suffering. In support of her motion for a new trial only on the issue of

---

[1] Due to defendant's pending motion for partial summary judgment concerning plaintiff's right to recover underinsured motorist benefits for medical expenses, lost wages, and permanent impairment of power to earn money, resulting from the motor vehicle collision in question, the court has not yet entered a judgment in this case, pending resolution of the defendant's motion for partial summary judgment.

damages for pain and suffering, plaintiff relies on *Adam v. J.B. Hunt Transport, Inc.*, 130 F.3d 219 (6th Cir. 1997).

In response, defendant objects to plaintiff's motion for a new trial, contending that she is not entitled to a new trial on damages concerning her claim for pain and suffering for the following reasons: (1) due to her pending Chapter 13 bankruptcy proceeding filed prior to the filing of this action, plaintiff has no standing to pursue a claim for pain and suffering since she failed to join the bankruptcy trustee as a party to this action; and, (2) plaintiff, as a matter of law, is not automatically entitled to a new trial on damages for pain and suffering. In the alternative, defendant asserts that if plaintiff is awarded a new trial, it should be a trial on all issues and not confined to the issue of plaintiff's damages for pain and suffering.

In reply, plaintiff points out that the case on which defendant relies to support its standing argument, *Griffin v. Allstate Insurance Company*, 920 F.Supp. 127 (D.C. Cal. 1996), concerned a Chapter 7 bankruptcy proceeding, not a Chapter 13 bankruptcy proceeding, and that since plaintiff's bankruptcy proceeding is a Chapter 13 case, *Griffin* is not applicable, and defendant's standing argument is without merit. Plaintiff's counsel also points out that he was given leave by the United States Bankruptcy Court for the Eastern District of Kentucky to pursue plaintiff's claims asserted herein and that any proceeds accruing from the present action "are to be paid to the bankruptcy estate." Reply to Defendant's Response, p. 2 [DE #71]. Plaintiff also reiterates that in the interests of judicial economy, a new trial should be limited to the issue of plaintiffs damages for pain and suffering.

2

## Applicable law

As the Kentucky Court of Appeals recently noted in *Bledsaw v. Dennis*, 197 S.W.3d 115 (Ky.App. 2006):

> A trial court's decision to grant or deny a motion for a new trial based on inadequate damages " 'is a discretionary function assigned to the trial judge who has heard the witnesses firsthand and viewed their demeanor and who has observed the jury throughout the trial.' " [FN4] Thus, we will not disturb a trial court's order denying such a motion so long as the order is supported by evidence [FN5] and thus is not clearly erroneous. [FN6]
>
> FN4. *Cooper v. Fultz*, 812 S.W.2d 497, 501 (Ky.1991) (quoting *Davis v. Graviss*, 672 S.W.2d 928, 932 (Ky.1984)), *abrogation on other grounds recognized by Sand Hill Energy, Inc. v. Ford Motor Co.*, 83 S.W.3d 483 (Ky.2002).
>
> FN5. *Miller v. Swift*, 42 S.W.3d 599, 601 (Ky.2001).
>
> FN6. *Bayless v. Boyer*, 180 S.W.3d 439, 444 (Ky.2005).

*Bledsaw*, 197 S.W.3d at 117.

The law in Kentucky concerning when a personal-injury plaintiff is entitled to a new trial when a jury awards damages for medical expenses but awards $-0- damages for pain and suffering has evolved in recent years. Previously, such a jury award was deemed to be inconsistent, warranting a new trial. However, the current state of the law is that, depending on the evidence presented at trial, such an award is not necessarily inconsistent and is not necessarily inadequate and that when considering a motion for a new trial in a case where the jury has awarded compensatory damages for medical expenses but has also affirmatively awarded $-0- for pain and suffering, it is necessary for the trial court to consider the evidence presented at trial relative to the plaintiff's alleged injury and claim of pain and suffering. *See Cooper v. Fultz*, 812 S.W.2d 497 (Ky. 1991).

More particularly, in considering plaintiff's motion for a new trial, the court is guided by the following three, relevant and controlling Kentucky cases: *Miller v. Swift*, 42 S.W.3d 599 (Ky. 2001), *Bayless v. Boyer*, 180 S.W.3d 439 (Ky. 2005), and *Bledsaw v. Dennis*, 197 S.W.3d 115 (Ky.App. 2006).

*Miller v. Swift, supra,* was a personal-injury action resulting from a two-vehicle collision where the drivers of both vehicles sued each other for personal injuries. The jury awarded plaintiff past medical expenses of $3,570.67, lost wages of $1,698.82, and $-0- for pain and suffering. Plaintiff moved for a new trial, arguing that the jury's award of zero damages for pain and suffering was inadequate as a matter of law because it was inconsistent with the jury's award of damages for medical expenses and lost wages. The trial court denied plaintiff's motion for a new trial, and the Kentucky Court of Appeals affirmed that decision. The Kentucky Supreme Court granted discretionary review and affirmed, under the following rationale:

> In *Cooper,* this Court rejected the contention that a jury's pain and suffering award was automatically inadequate as a matter of law when a jury intentionally indicated no pain and suffering award but awarded damages for medical expenses or lost wages. Instead, the *Cooper* Court remanded the matter for the trial court to determine whether, based upon the evidence submitted at trial, the jury's pain and suffering award was adequate.
>
> It appears that some confusion has resulted from *Prater v. Coleman,* [FN10] where a three-judge panel of the Court of Appeals misconstrued the *Cooper* holding and remanded a similar case for a new trial. In the case now before us, however, we believe the majority of the en banc panel correctly interpreted *Cooper*. We now overrule *Prater v. Coleman* to the extent it holds that a "0" award of pain and suffering damages, regardless of the evidence, is inadequate as a matter of law when accompanied by awards for medical expenses and lost wages.

FN10. Ky.App., 955 S.W.2d 193 (1997).

> Because the parties litigated the question of whether Miller endured additional pain and suffering as a result of this collision and Swift solicited testimony which

4

would support the jury's conclusion, we hold that the trial court did not abuse its discretion in denying Miller's new trial motion. One of the issues that this jury was empaneled to decide was whether the accident aggravated or aroused Miller's pre-existing pain, and the parties actively contested this factual issue. The trial court properly instructed the jury regarding permissible damages for pain and suffering when pre-existing conditions may have been aggravated, [FN11] and the jury concluded, on the basis of the evidence submitted to it, that Miller was not entitled to compensation for this item of damages. Even though they awarded Miller over $5000 in medical expenses and lost wages, the jury made a conscious decision to award nothing for pain and suffering.

FN11. *See Drury v. Spalding,* Ky., 812 S.W.2d 713 (1991).

The civil justice system uses juries to decide exactly these types of factual disputes, and the testimony and evidence at trial in this case contained substantial support for the jury's verdict. Both parties presented the jury with probative evidence on the issue of whether this collision caused Miller any additional pain and suffering, and the trial court properly denied Miller's motion for a new trial.

For the foregoing reasons, we affirm the judgment of the Court of Appeals.

*Miller,* 42 S.W.3d at 602-03.

Subsequently, in *Bayless v. Boyer,* 180 S.W.3d 439 (Ky. 2005), a personal-injury plaintiff sued two physicians for negligence and medical malpractice due to the fact that his broken wrist was not immediately diagnosed as a broken wrist until a couple of months following the injury and ultimately, the broken wrist had to be surgically repaired. The jury awarded plaintiff medical expenses of $9,802.16 relating to the cost of the wrist surgery and $-0- damages for pain and suffering. The trial court denied plaintiff's motion for a new trial, the Kentucky Court of Appeals affirmed, and the Kentucky Supreme Court granted discretionary review and affirmed.

Additionally, the recent decision by Kentucky Court of Appeals on July 7, 2006, in *Bledsaw v. Dennis, supra,* is consistent with *Miller* and *Bayless. Bledsaw* was a personal injury action arising from a motor vehicle collision. The defendants stipulated to liability, and the trial concerned only

5

plaintiff's damages. The jury awarded plaintiff her medical expenses of $3,560.63, but it awarded $-0- for pain and suffering. The trial court denied plaintiff's motion for a new trial. On appeal, the Kentucky Court of Appeals affirmed, explaining, as follows:

> As acknowledged by both parties, the Kentucky Supreme Court held in *Miller v. Swift* that "[t]he law in Kentucky ... does not require a jury to award damages for pain and suffering in every case in which it awards medical expenses." [FN7] More recently, the Supreme Court stated that "the general principle advanced in *Miller*--that a zero verdict for pain and suffering may sometimes be appropriate--is not constrained to the facts of that case. Rather, that principle is broadly applicable to cases which claim this type of error." [FN8] Although she does not cite to any part of the record in support of her claim for relief, Bledsaw attempts to distinguish *Miller* by arguing that it does not apply if, as here, the plaintiff's evidence is uncontroverted. However, the Supreme Court recently rejected a similar argument in *Bayless v. Boyer,* noting that despite claims that the evidence of the plaintiff's "pain and suffering was uncontroverted, there were numerous instances where relevant testimony on the subject was either impeached or contradicted." [FN9]
>
> FN7. 42 S.W.3d at 601.
>
> FN8. 180 S.W.3d at 444-45. (Citations omitted).
>
> FN9. Id. at 445.
>
> Similarly, here, Bledsaw testified and provided evidence that after the accident, she sought medical attention from two hospital emergency rooms, a chiropractor, and a pain doctor due to lower back pain. However, Bledsaw also testified that although the collision occurred while she was driving at approximately thirty miles per hour while not wearing a seat belt, no part of her body was thrown about the interior of her vehicle. She did not request any medical care immediately after the accident, instead telling several individuals that she was "okay." The collision left no visible injury on her, and the police report listed the collision as a "non-injury accident." Her first emergency room discharge released her to work the next day without work limitations. Moreover, no injuries were revealed by the x-rays which were taken during her second emergency room visit several days later. Bledsaw further testified that she did not remember who referred her to the chiropractor whom she saw only after obtaining the assistance of counsel. Finally, the evidence showed that Bledsaw was able to resume her normal school and work activities after a several-week holiday break.

As we have stated, "[a] jury is not bound to believe a plaintiff or her doctors." [FN10] Given our review of the record, we cannot say that the jury's verdict was not supported by the evidence, or that the trial court clearly erred by failing to grant a new trial.

FN10. *Spalding v. Shinkle,* 774 S.W.2d 465, 467 (Ky.App.1989).

The judgment of the Jefferson Circuit Court is affirmed.

*Bledsaw*, 197 S.W.3d at 117-18.

## Analysis

As seen from *Miller, supra, Bayless, supra*, and *Bledsaw, supra,* in the present action, it is necessary to consider the evidence regarding plaintiff's pain and suffering in order to determine whether the jury's award of zero damages for pain and suffering is inadequate as a matter of law.

### Dr. Steven P. Kiefer

Dr. Steven P. Kiefer, a board-certified neurosurgeon, is plaintiff's treating physician who first examined her on December 2, 2002, approximately one year and three months after the 9/11/01 accident. He has seen plaintiff intermittently since December 2002. Dr. Kiefer opined that plaintiff has a degenerative condition in her neck, cervical spondylosis, a condition that pre-existed the 9/11/01 accident, and a condition that can be aggravated from time to time by trauma. Particularly, Dr. Kiefer testified as follows:

> A. Ms. Morris has a degenerative condition in her neck, cervical spondylosis. This might have transiently been stirred up by her automobile accident, but any flare-up related to that would have been perhaps for a period of months. Her symptoms have waxed and waned and come and gone. And they're likely to continue to do so, based on her degenerative process in her neck.

(Kiefer Depo., pp. 13-14).

7

Dr. Kiefer also testified that "it's more very likely, probable, that she would have had symptoms regardless of a motor vehicle accident," (Kiefer Depo., p. 15), and that the "majority of her pain emanates from a flare-up of her underlying degenerative condition." (Kiefer Depo., p. 17).

### Dr. James W. Templin

Dr. Templin initially evaluated plaintiff on May 30, 2003 (about one year and nine months after the 9/11/01 accident) relative to plaintiff's workers' compensation claim. Dr. Templin evaluated plaintiff again on March 21, 2006. Dr. Templin did not treat plaintiff; he only evaluated her by referral from plaintiff's counsel. Dr. Templin opined that plaintiff "suffered from pre-existing degenerative arthritic changes of the cervical spine. Those seems to be dated back to the motor vehicle accident in 1971." (Templin Depo., pp. 16-17). Dr. Templin further testified that "this motor vehicle accident resulted in an arousal of her dormant condition, degenerative changes. Also, we now have a herniation." (Templin Depo., pp. 17-18).

### Dr. Darian Ratliff

Dr. Ratliff, an internist with general adult-population practice in eastern Kentucky, has been plaintiff's family physician since approximately March 29, 2005, nearly three and one-half years after the 9/11/01 accident. Dr. Ratliff testified that plaintiff had pre-existing degenerative arthritis and that "it could be exacerberated by an automobile accident." (Ratliff Depo., p. 6). Dr. Ratliff's prognosis is that plaintiff "continues to have the chronic pain syndrome with frequent exacerbations." (Ratliff Depo., p. 8). Dr. Ratliff further acknowledged that plaintiff's medical records from the Homeplace Clinic reflect that she was treated there on October 20, 1982, with a diagnosis of "DJD cervical spine," which meant degenerative joint disease in the neck. (Ratliff Depo., pp. 11-12).

8

### Dr. Richard T. Sheridan

Dr. Sheridan is a board-certified orthopedic surgeon who confines his practice to performing independent medical examinations (IMEs). Dr. Sheridan performed an IME on plaintiff on January 29, 2004, approximately two years, four months after the 9/11/01 accident. Dr. Sheridan found no abnormality in plaintiff's neck related to the 9/11/01 accident. (Sheridan Depo., p. 16). Dr. Sheridan testified that "the tests showed what they call degenerative changes in the neck area. Those are changes that you get from aging in the neck. I thought they were consistent with her age." (Sheridan Depo., pp. 17-18). Dr. Sheridan found nothing related to the 9/11 accident and opined that:

> A. Okay. I thought that her diagnosis referable to the accident of 9/11/01 was a result of acute cervical strain, which is a soft tissue injury to the muscles and ligaments in the area of the neck, and what I call a temporary aggravation of preexisting degenerative cervical disease. That means that the changes that I talked about that were on the tests, the x-ray changes, were temporarily aroused by the accident, but I thought that that temporary arousal had stopped.

(Sheridan Depo., p. 18).

Essentially, Dr. Sheridan concurred with Dr. Kiefer's assessment of plaintiff's neck condition. (Sheridan Depo., p. 19).

### Dr. Henry P. Tutt

Dr. Tutt, a board-certified neurosurgeon who has been in practice at the Lexington Clinic since 1974, performed an IME of plaintiff on February 15, 2006, approximately four years, five months after the 9/11/01 accident. Dr. Tutt's interpretation of a myelogram/CT scan performed on January 28, 2003, by Dr. Kiefer was that:

> A. It showed that she had spondylosis and by that I mean she had osteophytic spurring arising from several vertebrae that were long-standing in duration, bony arthritic changes, thickening of the

9

> zygohypophyseal joints or the facet joints which are the side and back of the spine. Without any evidence of any soft disc herniation and without any evidence of any clear root compression.

(Tutt Depo., pp. 23-24).

Explaining the foregoing testimony in layman's terms, Dr. Tutt elaborated:

> A. It is – it is arthritis. It's – it's hard to call it a disease. It's arthritis if it's symptomatic. You can see this as a natural process of living and aging. There's hardly a 70-year-old man or woman who, if they had a myelogram or an MRI scan, would not show some degree of these changes, sometimes, quite severely, without any associated symptoms. But they are, in fact, the result of repeated traumas throughout one's life. And by repeated traumas, I'm not talking about a motor vehicle accident or any other accidents. We're talking about the traumas of living, simply turning one's head from left to right and using one's neck through a full range of motion all one's neck, and bearing the weight of the head, and perhaps playing football or volleyball or being involved in numerous accidents or whatever. These changes reflect the combination of traumatic events throughout one's life. They're not something you develop over a short period of time, but over a long period of time.

(Tutt Depo., pp. 25-26).

Dr. Tutt further testified that the degenerative, arthritic changes in plaintiff's neck "could not have been caused by an accident, even two, three, four or five years earlier. These are changes that have their origin many, many years ago." (Tutt Depo., pp. 27-28). Dr. Tutt further opined that plaintiff "suffered a cervical strain or sprain as a result of a motor vehicle accident," and that "the average length of duration symptoms we judge to be from about two weeks to six weeks maximum." (Tutt Depo., p. 36). Further, Dr. Tutt did not understand plaintiff's complaints of pain, noting that her "complaints of pain are not dermatomally distributed. They do not correlate with a nerve root compression." (Tutt Depo., p. 37).

* * * * *

Summarizing the foregoing medical evidence, there is a plethora of medical evidence that plaintiff has DJD, degenerative joint disease, in her cervical spine (her neck) and that this arthritic process has been present for many years, being first diagnosed in October of 1982. Plaintiff has had complaints of episodes of neck pain that have waxed and waned over the years; perhaps the motor vehicle collision on 9/11/01, in which plaintiff may have sustained a cervical strain, could have triggered another episode of neck pain. However, given the medical evidence of plaintiff's long-standing degenerative, arthritic neck condition, and given the medical evidence that plaintiff would have had periodic episodes of neck pain, not as a consequence of the motor vehicle collision on 9/11/01 but as a consequence of the arthritic condition of her neck that has been present for many years, but just not always symptomatic, the court concludes that the jury's decision to award plaintiff zero damages for pain and suffering is supported by the medical evidence of record and that based on the facts and medical evidence presented in this particular case, such an award is not inadequate. Consequently, plaintiff is not entitled to a new trial on the issue of damages for pain and suffering.

Accordingly, **IT IS HEREBY ORDERED** that plaintiff's motion for a new trial [DE #67] is **DENIED**.[2]

This 22nd day of January, 2007.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE

---

[2] Having decided plaintiff's motion for a new trial on the merits, there is no need to address defendant's argument that plaintiff has no standing to pursue a claim for damages for pain and suffering due to her pending Chapter 13 bankruptcy proceeding.

11