Eastern District of Kentucky
FILED
APR 1 3 2007
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 05-441-JBT

PHYLLIS MORRIS,                                                                    PLAINTIFF

V.

CALIFORNIA CASUALTY
 INDEMNITY & EXCHANGE,                         DEFENDANT/THIRD PARTY PLAINTIFF

V.

COMMONWEALTH OF KENTUCKY,
acting on behalf of the Kentucky Community
and Technical College System, ET AL.,                        THIRD PARTY DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

\* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

In the interests of judicial economy, the factual and procedural background of this action that was set out in detail in the Memorandum Opinion and Order of January 23, 2007 [DE #78] is incorporated herein by reference as if stated in full.

This matter is currently before the court on plaintiff's motion to alter, amend or vacate the Memorandum Opinion and Order of January 23, 2007, and the Order and Judgment entered on January 23, 2007, which awarded plaintiff net compensatory damages in the amount of $41,940.13. This motion has been fully briefed and is ripe for review.

## II. PLAINTIFF'S MOTION TO ALTER, AMEND OR VACATE

In plaintiff's motion to alter, amend or vacate, which is unsupported by a memorandum of law explaining the basis for her motion, plaintiff requests that the Memorandum Opinion and Order as well as the Order and Judgment of January 23, 2007, be amended to reflect the following:

> a. That the Defendant is not entitled to any offset for future medical expense;
> b. That the Defendant is not entitled to an offset for PIP benefits paid to the Plaintiff;
> c. That the Court calculate the award and/or Judgment pursuant to Kentucky case law, specifically, AIK v. Bush, Ky. 74 SW 3d 251, (2002).

Motion to Alter, Amend or Vacate, p. 1 - DE #80.

### A. The offset for future medical expenses

The jury awarded plaintiff future medical expenses in the amount of $18,000.00. However, the court concluded that California Casualty was entitled to a credit for this future medical expense award for the following two, independent reasons: (1) the exclusion contained in plaintiff's insurance policy regarding UIM coverage, and (2) KRS 342.020(1).

### 1. policy exclusion

The exclusion contained in plaintiff's insurance policy regarding UIM coverage states, as follows:

> This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
>
> 1. Workers' Compensation Law,
> 2. Disability Benefits Law

As California Casualty previously noted in respect to this exclusion:

2

> The purpose of this exclusion is clear. California Casualty wanted to provide coverage for its insured to the extent that she had no other source of recovery whether it was the tortfeasor, employer or other collateral party. This intent was conspicuous, plain and clearly manifested on the face of the exclusion. Accordingly, the provision must be enforced under the "reasonable expectations" doctrine. <u>Motorist Mutual Insurance Company vs. Glass</u>, Ky. 996 S.W.2d 437 (1977); <u>Ohio Casualty Insurance Company vs. Stanfield</u>, Ky. 581 S.W.2d 555 (1979).

<u>Reply</u>, p. 2 - DE #26.

In her motion to vacate, plaintiff offers no reason to contest the validity of this exclusion. The Kentucky Motor Vehicle Reparations Act recognizes that UIM coverage is optional and affords insurers the latitude to define its parameters. See <u>Flowers v. Wells</u>, 602 S.W.2d 179 (Ky. App. 1980); <u>Pridham v. State Farm Mutual Insurance Company</u>, 903 S.W.2d 909 (Ky. App. 1995); <u>Motorist Mutual Insurance vs. Glass</u>, 996 S.W.2d 437 (Ky. 1997).

It appears that the purpose of this exclusion, as well as the UIM coverage itself, is to provide benefits to the insured where there is no other source of recovery available to the insured. The purpose of this exclusion is not meant to reduce the liability of a third party obligor that was not a party to the insurance contract. Therefore, the exclusion in question should be given full force and effect.

**2.    KRS 342.020(1)**

KRS 342.020(1) provides, in relevant part, as follows:

**KRS 342.020 Medical treatment at expense of employer; . . .**

(1) In addition to all other compensation provided in this chapter, the employer shall pay for the cure and relief from the effects of an injury or occupational disease the medical, surgical, and hospital treatment, including nursing, medical, and surgical supplies and appliances, as may reasonably required at the time of the injury and thereafter during disability, or as may be required for the cure and treatment of an occupational disease. The employer's obligation to pay the benefits specified in this

3

section shall continue for so long as the employee is disabled regardless of the duration of the employee's income benefits. . . .

Therefore, irrespective of the exclusion contained in plaintiff's UIM coverage, plaintiff's employer is statutorily required by pay for all of plaintiff's medical expenses, including future medical expenses.

In *Cincinnati Insurance Company v. Samples*, 192 S.W.2d 311 (Ky. 2006), the Kentucky Supreme Court permitted Samples, the injured employee, to recover future medical expenses from his UIM carrier; however, the benefit of this holding was actually realized by Samples' employer, rather than Samples, in that the employer was allowed to suspend workers' compensation payments for future medical expenses until the actual expenses exceeded the jury's award of future medical expenses to Samples. Nevertheless, *Cincinnati Insurance* is factually distinguishable from the present action in that in *Cincinnati Insurance*, plaintiff's UIM coverage did not contain an exclusion for workers' compensation paid to the plaintiff; therefore, *Cincinnati Insurance* is not controlling on this point because the exclusionary language in the plaintiff's insurance policy concerning UIM coverage was not before the court in that case.

**B.    the offset for PIP benefits paid to the plaintiff**

At the time of trial, California Casualty had already paid plaintiff PIP benefits in the amount of $5,956.00. Thus, in order to avoid double recovery to plaintiff, the court concluded that California Casualty was entitled to a credit of $5,956.00 against the total damages awarded by the jury for PIP benefits previously paid to plaintiff.

The court's decision that California Casualty is entitled to the foregoing offset was based on the clear language of KRS 342.700(1), which provides, in part, as follows:

4

> Whenever an injury for which compensation is payable under this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages, the injured employee may either claim compensation or proceed at law by civil action against the other person to recover damages, or proceed both against the employer for compensation and the other person to recover damages, *but he shall not collect from both*. (Emphasis added).

KRS 342.700(1).

In *Cincinnati Insurance, supra,* the Kentucky Supreme Court elaborated on this statute's prohibition against double recovery in these situations, as follows:

> The statute "expresses a clear legislative intent that an injured employee should not be allowed to recover from both the compensation carrier and a third-party tortfeasor." *Davis v. Buley,* 634 S.W.2d 161, 163 (Ky.App.1982); see also *Old Republic Ins. Co. v. Ashley,* 722 S.W.2d 55, 59 (Ky.App.1986) ("The policy behind KRS 342.700(1), that an injured employee should not recover from both the workers' compensation carrier and a third-party tortfeasor, has long been recognized by Kentucky courts."); 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 110.02, at 110-3 (Matthew Bender 2004) ("It is equally elementary that the claimant should not be allowed to keep the entire amount both of his or her compensation award and of the common law damage recovery.") (footnotes omitted).

> In *Krahwinkel v. Commonwealth Aluminum Corp.,* 183 S.W.3d 154 (Ky.2005), we held that KRS 342.700(1) precludes a civil plaintiff from recovering from a tortfeasor the same elements of damages for which he had already been compensated by way of workers' compensation benefits; and that the tortfeasor is entitled to an offset or credit against the judgment for those damages awarded by the jury that duplicate workers' compensation benefits. 183 S.W.3d at 160. The issue in this case is whether the same principle applies to a civil plaintiff seeking to recover damages, duplicative of workers' compensation benefits, against a UIM (or for that matter uninsured motorist ("UM")) carrier who is sued for damages otherwise payable by the underinsured (or uninsured) tortfeasor.

> We start with the proposition that KRS 342.700(1) is a workers' compensation statute, not an insurance statute; thus, its mandate that "he shall not collect from both" is a limitation on the rights of the worker that is attendant to his right to collect workers' compensation benefits. It is not a defense personal to the tortfeasor, but would also apply to any attempt to recover damages against, *e.g.*, the tortfeasor's employer (if applicable), his parent (if he is a minor and the parent had signed for his

5

driver's license), his insurer (if permitted), or anyone else who could be held liable because of the tortfeasor's negligence.

*Cincinnati Insurance*, 191 S.W.3d at 315.

Additional authority for this offset is also found in KRS 304.39-060(2)(a), which provides:

> Tort liability with respect to accidents occurring in this Commonwealth and arising from the ownership, maintenance, or use of a motor vehicle is "abolished" for damages because of bodily injury, sickness or disease *to the extent the basic reparation benefits provided in this subtitle are payable therefor*, or that would be payable but for any deductible authorized by this subtitle, under any insurance policy or other method of security complying with the requirements of this subtitle, except to the extent noneconomic detriment qualifies under paragraph (b) of this subsection [emphasis added].

KRS 304.39-060(2)(a).

Under the foregoing statute, "an injured party is not entitled to an award of damages from the defendant in the trial on liability for any item of damages which was compensated by BRB." *Progressive Casualty Insurance Company v. Kidd*, 602 S.W.2d 416, 417 (Ky. 1980).

In this case, California Casualty presented evidence that it had paid plaintiff PIP benefits in the amount of $5,956, a figure that was not contested by plaintiff. Consequently, plaintiff has no right to recover the amounts paid in basic reparation benefits. *See also, Henson v. Fletcher*, 957 S.W.2d 281 (Ky.App. 1997).

**C. Calculation of plaintiff's award pursuant to <u>AIK v. Bush</u>, 74 S.W.3d 251 (Ky. 2002)**

Plaintiff also requests that the adjustments to the jury's award of benefits to her be calculated in accordance with *AIK v. Bush*, 74 S.W.3rd 251 (Ky. 2002). Plaintiff offers no explanation as to how *AIK* is relevant to this action or why the award in her case should be calculated in the same manner as the award in *AIK*.

6

*AIK* was a tort action filed by Bush, an injured employee, against William Dixon, M.D., concerning Dixon's alleged negligence in treating Bush for his exposure to carbon monoxide that occurred while Bush was driving a forklift for his employer, Advance Distribution Services. AIK provided workers' compensation coverage for plaintiff's employer, paid plaintiff workers' compensation benefits totaling $239,078.73, and intervened in the tort action Bush filed against Dixon seeking recoupment of benefits paid to Bush. Additionally, defendant Dr. Dixon filed a third-party complaint for contribution against Bush's employer, Advance Distribution Services.[1]

Following a jury trial, without regard to fault, the jury awarded Bush total damages of $2,000,936.68; however, the jury apportioned 25% of the fault against Dr. Dixon and 75% of the fault against Advance Distribution, thus reducing the total judgment to $500,234.17, the amount proportionate to Dr. Dixon's percentage of fault. The trial court did not permit AIK to recoup from the judgment any amount of the workers' compensation benefits it had paid to Bush.

The Kentucky Supreme Court granted discretionary review and concluded that AIK was entitled to recoup 25% of its payments of temporary total and permanent partial disability benefits from the judgments for lost wages and future lost wages; 25% of its payments of medical benefits from the judgment for past medical expenses; and 25% of any medical expenses which it had paid subsequent to the judgment, from the judgment for future medical expenses. The Kentucky Supreme Court also concluded that AIK was entitled to a 25% credit against all future medical expenses which

---

[1] The effect of the third-party complaint was to permit an apportionment of liability against the employer and to deny Bush the right to recovery any damages attributable to the employer's percentage of fault. KRS 411.182(4); *Dix & Assoc. Pipeline Contrs. v. Key*, 799 S.W.2d 24, 29-31 (Ky. 1990).

7

it may pay for or on behalf of Bush for his injuries, up to a maximum of the balance, if any, from the judgment for future medical expenses. *AIK*, 74 S.W.3d at 253.

In the present action, the court surmises that plaintiff's request for the court to calculate her award of damages consistent with *AIK* concerns the fact that the court in *AIK* permitted Bush to retain the jury's award for future medical expenses, but concluded that AIK was entitled to a 25% credit against all future medical expenses which it may pay for or on behalf of Bush for his injuries, up to a maximum of the balance, if any, from the judgment for future medical expenses. Thus, it appears that plaintiff is arguing that she should be entitled to retain the jury's award of $18,000 for future medical expenses and that California Casualty should be given a credit against all future medical expenses she incurs up to a maximum of $18,000.

Plaintiff's argument ignores the critical distinction that all of her medical expenses associated with the injuries she sustained in this motor vehicle collision will be paid, not by California Casualty, but by her employer's workers' compensation carrier, since plaintiff's employer is statutorily required by KRS 342.020(1) to pay for all of plaintiff's medical expenses, including future medical expenses. In *AIK*, Bush's employer was responsible for his past and future medical expenses associated with the carbon monoxide poisoning, and those expenses had been paid and would be paid by AIK, the workers' compensation insurer; thus, the court in *AIK* gave AIK a credit against its proportionate share of all future medical expenses that might be incurred because AIK was the party that would ultimately be responsible for any future medical expenses incurred. Therefore, the party who was given a credit against future medical expenses was the same party who would ultimately be paying those future medical expenses.

8

To reiterate, in the present action, plaintiff's future medical expenses will be borne by her employer, not California Casualty, the UIM carrier. The judgment against California Casualty was reduced by the jury's award of $18,000 for future medical expenses because any future medical expenses that are incurred will be paid by the workers' compensation carrier for plaintiff's employer, not California Casualty. Had there been no reduction for the award of future medical expenses, plaintiff would have realized a double recovery for the same element of damages. Double recovery is precluded by KRS 342.700(1).

In sum, *AIK* is not controlling because it is factually distinguishable. *AIK* and the present action did not concern precisely the same issues; *AIK* did not concern any UIM coverage issues. Thus, plaintiff's reliance on *AIK* is misplaced.

Accordingly, for all of the reasons stated above, **IT IS HEREBY ORDERED** that plaintiff's motion to alter, amend or vacate the Memorandum Opinion and Order of January 23, 2007, and the Order and Judgment of January 23, 2007 [DE #80] is **DENIED**.

This __13th__ day of April, 2007.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE

9